UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. I.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 20-cv-05811-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 25 |

Plaintiff seeks Social Security benefits for physical and mental impairments including a gun shot to the spine, depression, anxiety, and bipolar disorder.[1] (Administrative Record ("AR") 234, 276.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. After carefully considering the parties' cross-motions for summary judgment, (Dkt. Nos. 17, 25), the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ erred in her weighing of the medical evidence and rejection of Plaintiff's subjective symptom testimony, but there are outstanding issues to be resolved before a disability determination can be made, remand for further proceedings is proper.

**BACKGROUND**

**A. Procedural History**

Pursuant to the Social Security Act (the "Act"), on October 23, 2017, Plaintiff filed an

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3, 8.)

application under Title XVI for supplemental security income alleging a disability onset date of March 11, 2017.[2] (AR 45, 233.) Plaintiff's application was denied initially and upon reconsideration. (AR 45.) Plaintiff then submitted a request for a hearing before an ALJ and his hearing was held on October 4, 2019. (*Id.*)

The ALJ issued her decision on December 12, 2019. (AR 45-57.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 23, 2017, the alleged onset date. (AR 47.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: depression with psychotic features and anxiety disorder. (*Id.*) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926). (AR 49.) The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but with the nonexertional limitations of simple routine tasks, rare contact with the public or co-workers, occasional interactions with supervisors, and a low stress environment. (AR 50.) Based on this RFC, and in light of the vocational expert's testimony, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform, and that he was therefore not disabled. (AR 55-56.) Plaintiff subsequently appealed to the Appeals Council which found no reasons to review the ALJ's decision and denied Plaintiff's request for review. (AR 1.)

Plaintiff thereafter sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment, which are now ready for decision without oral argument. (Dkt. Nos. 17, 25.)

**B. Issues for Review**

1. Did the ALJ err in evaluating the medical evidence?

2. Did the ALJ err in evaluating Plaintiff's subjective symptom testimony?

3. Did the ALJ err in determining Plaintiff's severe impairments?

4. Did the ALJ err in determining that Plaintiff's impairments do not meet or equal a

---

[2] Plaintiff later amended this date to his disability onset date. (AR 45, 347.)

listing?

5. Did the ALJ err in determining Plaintiff's residual functional capacity?

5. Should the Court remand for payment of benefits or further proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

**DISCUSSION**

**A.   Medical Opinion Evidence**

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of

3

a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal citations omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (internal citations omitted).

For benefits applications filed after March 27, 2017, such as this one, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). "The new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)). "Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as 'evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.'" *P.H. v. Saul*, No. 19-CV-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).

The Commissioner insists that the new regulations overrule the treating source rule. The Ninth Circuit has not yet addressed this issue and "[i]t remains to be seen whether the new

4

regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (internal citation omitted). District courts within the Ninth Circuit have answered the question differently. *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) ("[t]his Court is bound by precedent of the Ninth Circuit and may not overrule a decision from that court. The history of the 'clear and convincing' standard indicates it will not likely be altered by the new regulations, as it was based on evidentiary principles in administrative law, and not on a hierarchy of opinions.") (cleaned up); *J.C. v. Kijakazi*, No. 20-CV-06746-TSH, 2021 WL 5744485, at *4 (N.D. Cal. Dec. 2, 2021) (holding that "[g]iven the Ninth Circuit's holding in *Lambert* [*v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020)], the Court finds "it must defer to the new regulations, even when they conflict with judicial precedent."). This Court, however, need not resolve this question here because under either set of rules—the new regulations which focus on consistency and supportability or the Ninth Circuit's treating source rule—the ALJ's weighing of the medical evidence is not supported by substantial evidence.

Plaintiff challenges the weight the ALJ gave to the following medical opinions: (1) the opinion of Plaintiff's examining psychologist Nicole Kirsch, Psy.D; (2) the opinions of Plaintiff's treating psychiatrist Said Shefayee, M.D. and treating therapist Jonathan Oakes, LMFT; and (3) the opinions of the non-treating, non-examining State agency psychological consultants.

**1. The Opinions of Plaintiff's Examining Psychologist**

Plaintiff insists that the ALJ erred in assigning partial weight to the opinion of Dr. Nicole Kirsch who conducted a psychological evaluation of Plaintiff on August 2, 2019. Dr. Kirsch diagnosed Plaintiff with posttraumatic stress disorder; major depressive disorder with mood congruent and psychotic features (possibly in remission); and substance use disorder in sustained remission in a controlled environment. (AR 961.) Dr. Kirsch found that Plaintiff would have marked limitation in his ability to respond appropriately to changes in a routine work setting and

5

deal with normal work stressors, and extreme limitations in his ability to: get along and work with others, interact with the general public, accept instructions and respond appropriately to criticism from supervisors, complete a normal workday/workweek without interruptions from psychologically based symptoms, and maintain regular attendance and remain punctual. (AR 963.)

The ALJ gave limited weight to Dr. Kirsch's opinion finding that

> Although her opinion regarding the lack of limitation in the ability to understand, remember, or carry out instructions is consistent with and supported by other evidence including the longitudinal treatment record discussed above, and Dr. Kirsch's own observations of the claimant, her opinion that his ability to interact with others is extremely limited is not fully supported by or consistent with other evidence, including evidence that the claimant interacted productively with mental health providers while incarcerated, and evidence that he participated in coursework even while incarcerated. Her opinion that his ability to complete a normal workday and maintain attendance is extremely limited is also not supported by sufficient explanation; the longitudinal treatment record discussed elsewhere in this decision does not document observed psychological symptoms consistent with this opinion.

(AR 55.) The ALJ nonetheless stated that she was "taking into consideration aspects of Dr. Kirsch's opinions" by "limiting [Plaintiff] to rare contact with the public and co-workers, and to occasional interaction with supervisors, and to a low stress work environment." (*Id.*)

### a) **Extremely Limited in Ability to get Along With Others**

Plaintiff first insists that the ALJ erred in finding not persuasive Dr. Kirsch's opinion that Plaintiff is extremely limited in his ability to get along with others. The ALJ found that Dr. Kirsch's limitations on Plaintiff's ability to interact with others was not fully supported by the record because Plaintiff "completed coursework while incarcerated" and had "interacted productively with mental health providers while incarcerated." (AR 55.) However, Dr. Shefayee and Mr. Oakes, the mental health providers who treated Plaintiff while he was incarcerated throughout 2018 and early 2019, assessed Plaintiff as having marked limitations in his ability to work near others and moderate limitations in his ability to interact appropriately with coworkers, and extreme limitations in his ability to accept instructions and respond appropriately to criticism from supervisors. (AR 695, 950.) In other words, they found that he had limited abilities to interact productively with others.

6

1    Plaintiff argues further that Dr. Kirsch's opinion was supported by her own examination of
2    Plaintiff and the other evidence of record.  In particular, Plaintiff emphasizes the evidence that he
3    repeatedly provided sexually explicit answers to Dr. Kirsch's questioning and had to be redirected.
4    (AR 956, 960.)  In addition, Dr. Kirsch noted that Plaintiff reported ongoing anxiety due to
5    traumatic life events which made it difficult to get along with others, and reported symptoms of "a
6    feeling to flee, hypervigilance, sweaty palms, feelings of aggression toward others, and racing
7    heart beat and thoughts." (AR 955.)  Further, Dr. Kirsch found that Plaintiff's performance on the
8    Beck Anxiety Inventory fell into the "severe" range and his performance on the PTSD Checklist
9    fell above the cut-off score for PTSD which "demonstrated elevations related to anxiety
10   symptoms." (AR 960.)

11   The ALJ did not discuss these portions of Dr. Kirsch's opinion which are consistent with
12   her opinions regarding Plaintiff's extreme limitations in interacting with others.  This omission
13   was error.[3] *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding that the ALJ
14   erred in selectively relying on entries in the medical record while "ignor[ing] the many others that
15   indicated continued, severe impairment."); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA,
16   2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (internal citations omitted) ("An ALJ may not
17   cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider
18   the evidence as a whole in making a reasoned disability determination."). The ALJ's error,
19   however, is tempered by the ALJ having included in Plaintiff's RFC only rare contact with co-
20   workers and the public, occasional interaction with supervisors, and a low-stress environment.
21   (AR 55.)  Plaintiff does not address these limitations and whether they render the ALJ's error
22   harmless.  Because other errors with respect to the weighing of the medical evidence discussed
23   below require remand, the Court leaves this question to the ALJ in the first instance as she, rather
24   than the Court, is charged with weighing the medical evidence.  *See Carmickle v. Comm'r, Soc.*
25   *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  On remand, the ALJ shall reconsider her

---

[3] The Court does not address whether the ALJ also erred in relying on Plaintiff's completion of coursework while incarcerated as a basis for rejecting Dr. Kirsch's opinions regarding Plaintiff's limitations on interacting with others given that the ALJ's other basis for rejecting her opinion is not supported by substantial evidence and remand is required to address this issue.

weighing Dr. Kirsch's testimony in light of the error identified above and revise Plaintiff's RFC, as necessary.

### b) Extremely Limited in Regular Attendance and Normal Workday

Plaintiff next argues that the ALJ erred in rejecting Dr. Kirsch's opinion regarding Plaintiff's extreme limitations in the ability to complete a normal workday and maintain attendance as unsupported by sufficient explanation and the longitudinal records. (AR 55.) The Court agrees. First, the ALJ ignored the portions of Dr. Kirsch's opinion which support her limitations; namely, that Plaintiff advised Dr. Kirsch that he had not worked since he was fired from his security guard position after several weeks of work because he "experienced challenges with his supervisor," that Plaintiff's "ongoing symptoms of anxiety [] have contributed to his challenges in getting along with others," that "his symptoms often result in him being unable to get out of bed when they are exacerbated," and that he was inconsistently cooperative during her examination. (AR 952, 955, 961.)

Second, the longitudinal record reflects that Plaintiff has a history of at least 15 episodes of county psychiatric treatment, including emergency treatment at John George Psychiatric Pavilion, three episodes of treatment in county jail, and mental health treatment as a youth at the "Youth Authority" and "Guidance Center." (AR 377.)

Third, these limitations are consistent with those found by Plaintiff's treating providers, Dr. Shefayee and Mr. Oakes who likewise found Plaintiff had marked limitations in the ability to maintain regular attendance and be punctual, and in completing a normal workday and workweek without interruptions from psychologically based symptoms. (AR 695, 950.)

Finally, Plaintiff testified that he had been in administrative segregation for the past four months for a disciplinary infraction, that prior to his incarceration he was terminated from his security jobs because he "had altercations with the supervisors and [he] wasn't on my post," and that he started received psychiatric treatment in juvenile halls when he was 12-13. (AR 26, 28.) "Under both the old and new regulations, an ALJ errs by failing to address evidence in the record that is consistent with a medical opinion the ALJ discounts." *Atticus W. v. Kijakazi*, No. 3:20-CV-01542-SB, 2021 WL 5108743, at *5 (D. Or. Nov. 3, 2021) (collecting cases).

\*\*\*

Accordingly, the ALJ's rejection of Dr. Kirsch's finding that Plaintiff was extremely limited in the ability to complete a normal workday and maintain attendance is not supported by substantial evidence.

### 2. The Opinions of Plaintiff's Treating Psychiatrist and Therapist

Plaintiff contends that the ALJ also erred in finding that the opinions of Plaintiff's treating psychiatrist Dr. Shefayee and treating therapist Mr. Oakes were unpersuasive. Dr. Shefayee and Mr. Oakes completed mental impairment questionnaires on March 7, 2019, and December 31, 2018, respectively. (AR 695-696, 950-951.) They both found the same limitations; namely, that claimant would miss more than four days of work per month due to his impairments, and that his impairments would interfere with concentration or pace fifty percent of the workday; that he had a marked limitation of the ability to understand, remember, and carry out even simple instructions, marked limitation of the ability to maintain attendance; marked limitation of the ability to work with or near others; and marked limitation of the ability to deal with normal work stress; that he was extremely limited in his ability to sustain ordinary routine without special supervision and in his ability to accept supervision; but that he had a mild limitation of the ability to interact with the public. (AR 695-696, 950-951.)

The ALJ assigned these opinions little weight because (1) the opinions "are not supported by an explanation within" the questionnaire including because there was no explanation for the finding that he would miss at least four days a month; (2) the opinions regarding Plaintiff's marked limitations in the ability to understand, remember, and carry out even simple instructions "are not consistent with or supported by progress notes throughout the longitudinal record"; (3) the opinions "are not consistent with or supported by their own progress notes" which do not reflect any impairments which would interfere with concentration or pace;  and (4) the opinions are not "supported by other evidence, including the claimant's own allegations discussed elsewhere in this decision, including his admission that he has not had difficulty in understanding information, and including the opinion of Dr. Kirsch that the claimant has no limitation of the ability to understand, remember, and carry out even detailed instructions." (AR 53-54.)

9

1        Plaintiff concedes that the "ALJ may permissibly reject check-off reports that do not
2   contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111
3   (9th Cir. 2012) (cleaned up).  Plaintiff nonetheless maintains that the ALJ erred in doing so here
4   because Dr. Shefayee and Mr. Oakes' "conclusions are generally supported by their own progress
5   notes, and constitute a summary of their overall experience engaging with Plaintiff over time."
6   (Dkt. No. 17 at 13.)  Plaintiff identifies a variety of treatment records from December 2017
7   through April 2019.  (*Id*. at 13-14 (citing AR 378, 381, 383, 929-930, 937, 938, 939, 942, 936,
8   948, 965).)  While Plaintiff concedes that these progress notes reflect a period of improvement
9   once Plaintiff is placed on a medication regimen, and again, after his mediation was adjusted,
10  Plaintiff identifies records from late 2018 through early 2019 wherein Dr. Shefayee consistently
11  observed a dysphoric/sad affect.  However, these records also reflect that Plaintiff is "doing well
12  with the current med regimen," that he is able to communicate properly, and is clear and
13  cooperative (AR 941-42 (9/27/18 treatment note)), and that between December 2018 and April
14  2019 the reports consistently state that since the dose of his Effexor mediation was increased
15  Plaintiff "has no c/o depressed mood and feeling isolated," that he is clear and cooperative, able to
16  communicate properly, and although is "mood is sad not in acute distress and affect is congruent."
17  (AR 945-48, 964-65 (12/13/18, 1/24/19, 4/25/19 treatment notes).

18       These treatment notes thus do not provide support for Dr. Shefayee and Mr. Oakes' "check
19  the box" opinion that Plaintiff would have marked limitation in the ability to understand,
20  remember, and carry out even simple instructions.  Likewise, neither the longitudinal medical
21  evidence nor Plaintiff's own testimony, support these limitations.  As the ALJ notes, the medical
22  records do not document any concerns in this area, and to the contrary, reflect that Plaintiff was
23  consistently described as cooperative, a reliable historian, and that his hallucinations had abated
24  following treatment.  (AR 53-54; *see also* AR 22 (testifying that the voices have subsided through
25  treatment); AR 964-65 (4/25/19 treatment notes stating that he is "clear and cooperative" and
26  "does not experience aud or visual halls any more); AR 966 (6/5/19 treatment notes "not
27  experiencing any command hallucinations," "good historian," "[n]o noted concerns with
28  memory"); AR 969 (6/13/19 treatment notes "denied auditory / visual hallucination," "cooperative

on evaluation," "reliable historian"); AR 970 (7/15/19 treatment notes "denies CI, HI, AH, VH," "cooperative and engaged," "good historian," "thought process linear and content goal oriented."); AR 973 (7/25/19 treatment notes "denied auditory / visual hallucination," "appears to be reliable historian," "thoughts are linear and goal directed," "cooperative"); AR 975 (8/19/19 treatment notes "denies A/VH/delusions," "pleasant and cooperative," "alert and oriented").) Further, Dr. Kirsch, who conducted a comprehensive psychological examination of Plaintiff on August 2, 2019, concluded that Plaintiff had no limitations in the ability to understand, remember and carry out instructions and only mild limitations in the ability to maintain attention and concentration for two hours. (AR 963.) Accordingly, substantial evidence supports the ALJ's rejection of Dr. Shefayee and Mr. Oakes' opinions that Plaintiff would have marked limitation in the ability to understand, remember, and carry out even simple instruction. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

In contrast, for the same reasons discussed above with respect to Dr. Kirsch, substantial evidence does not support the ALJ's rejection of Dr. Shefayee and Mr. Oakes' opinions regarding Plaintiff's marked limitations in the ability to maintain attendance, complete a normal workday, work with or near others, and deal with normal work stress, and his extreme limitations in the ability to sustain ordinary routine without special supervision and in his ability to accept supervision. The ALJ failed to discuss the medical evidence which supported Dr. Shefayee and Mr. Oakes' opinions regarding Plaintiff's marked limitations with respect to interacting with others, maintaining attendance, and completing a normal workday. While the RFC limitations of rare contact with co-workers and the public, occasional interaction with supervisors, and a low-stress environment, might mitigate this error at least in part, it does not address their findings with respect to Plaintiff's inability to maintain attendance or complete a normal workday. Accordingly, on remand, the ALJ shall reconsider the weighing of the medical evidence in light of the totality of the medical record as discussed above.

The Court declines to reach Plaintiff's claim of error with respect to the ALJ's rejection of Dr. Shefayee and Mr. Oakes' opinions that Plaintiff would miss several days of work per month.

11

The ALJ rejected these opinions because they were "not supported by an explanation." (AR 53.) Plaintiff's only challenge to the ALJ's finding in this regard is to cite to a medical record wherein Plaintiff refused to come out of his cell to meet with a medical provider. (Dkt. No. 17 at 14 (citing AR 374).) However, according to the notes from this visit, the medical provider went to visit Plaintiff at his cell after he refused to come out and he was sleeping and apologized for not coming out, but reported that he was "feeling sleepy." (AR 374.) This evidence does not undermine the ALJ's finding; nevertheless, because the ALJ on remand must consider whether the medical record as a whole supports Dr. Kirsch, Dr. Shefayee, and Mr. Oakes' opinions that Plaintiff is markedly limited in his ability to complete a normal workday and maintain regular attendance, the ALJ shall reconsider whether that evidence likewise supports Dr. Shefayee, and Mr. Oakes' opinions regarding how many days a month Plaintiff would be absent from work.

### 3. The Opinions of the State Agency Psychological Consultants

Finally, Plaintiff insists that the ALJ erred in finding that the state agency psychological reviewers' opinions were persuasive. Dr. Prout issued his opinion on March 16, 2018, concluding that Plaintiff had mild limitation in the ability to understand, remember, or apply information, moderate limitation of the ability to interact with others and the ability to concentrate, persist, or maintain pace, and mild limitation of the ability to adapt or manage himself. (AR 70-73.) Dr. Prout did not find Plaintiff substantially limited in the ability to complete a normal workday or perform at a consistent pace. (AR 72.) Dr. Bokelberg issued her opinion two months later agreeing with Dr. Prout's findings. (AR 83-84.)

The ALJ found these opinions persuasive because they are "consistent with and supported by the longitudinal treatment record discussed above and because these doctors are familiar with the rules applicable to the Social Security Administration's disability benefits programs." (AR 54.) Plaintiff insists that the ALJ erred in so finding because the majority of the longitudinal record was not available at the time the state agency reviewers offered their opinions. (Dkt. No. 17 at 18.) That is, they did not have the more than 18 months of behavioral health records from Alameda County jails or the psychological assessments conducted by Dr. Shefaye, Mr. Oakes, or Dr. Kirsch.

12

1    "While the new regulations have abandoned the 'controlling weight' rule, the treatment
2    relationship with the claimant continues to be a factor that must be considered in determining the
3    weight to be given medical opinions." *See V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS,
4    2020 WL 1505716, at *16 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 404.1520c(c)(3)).
5    Accordingly, the ALJ erred in giving the state agency reviewers' opinions persuasive weight—the
6    most weight given the any opinion—without considering their lack of treatment relationship with
7    Plaintiff and the supportability of their opinions given that they pre-date the bulk of the behavioral
8    health treatment records before the ALJ. *See V.W.*, 2020 WL 1505716 ("the ALJ is required to
9    specifically address the two most important factors, supportability and consistency") (citing 20
10   C.F.R. § 416.920c(b)(2))).

## B.     Plaintiff's Subjective Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 41.)  Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036.  Here, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these

13

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 51-52.) This statement is followed by a summary of Plaintiff's history of mental health care and then a summary of the various medical opinion testimony. (AR 52-55.)

First, the ALJ's boilerplate conclusory rationale fails to satisfy the requirement that an ALJ provide "specific, clear, and convincing reasons" supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (finding that the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding the ALJ erred in failing to "specifically identify any such inconsistencies" and instead stating "her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination."). To ensure meaningful review, the ALJ must provide "specific reasons" "so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494. That is, the ALJ must "link that testimony to the particular parts of the record supporting her non-credibility determination." *Id*. The ALJ's failure to do so here is grounds for remand.

Second, to the extent that the ALJ's summary of Plaintiff's history of mental health care is meant to suggest that Plaintiff's symptoms periodically show improvement, the ALJ must consider this improvement in context. While the effectiveness of treatment is a relevant factor an ALJ may consider when evaluating subjective symptom testimony, *see* 20 C.F.R. §§ 404.1529(c)(3)(iv–v), 416.929(c)(3)(iv–v), "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," *Garrison*, 759 F.3d at 1017. Rather, reports of improvement in the mental health context "must be interpreted with an understanding of the patient's overall well-being and the nature of h[is] symptoms." *Id*.; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]tatements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

14

Further, reports of improvement in symptoms "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017 (citing *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.") Here, the ALJ failed to consider whether Plaintiff's improved mental health status was the product of his environment, i.e., his stable institutional setting with consistent access to mental health treatment and medication, and how that might change once Plaintiff is not in such a setting. *See, e.g.*, *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."). Plaintiff's limited employment history indicated that he was unable to maintain employment because of difficulty getting along with supervisors and failure to reliably follow directions. (AR 26, 28.)

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

**C.     Harmless Error**

Because the ALJ's consideration of the medical evidence and subjective symptom testimony are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's step-two and step-three analysis and the RFC. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in weighing the medical opinion evidence and rejecting Plaintiff's subjective symptom testimony, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's mental capacity to work. *Id*. at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental

15

impairments would preclude him from returning to gainful employment).

**D.     Remand**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to her weighing of Dr. Kirsch, Dr. Shefayee, and Mr. Oakes' opinions regarding Plaintiff's ability to interact with others and to maintain a regular workday and attendance, and in rejecting Plaintiff's subjective symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting Dr. Kirsch, Dr. Shefayee, and Mr. Oakes' opinions, and Plaintiff's subjective symptom testimony. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited. Further proceedings are therefore warranted.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

//

//

//

16

This Order disposes of Dkt. Nos. 17 and 25.

**IT IS SO ORDERED.**

Dated: March 1, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

17